**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| ROVSHAN SADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. __7:26-cv-234__ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| EAST PECOS SOLAR LLC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Rovshan Sade ("Mr. Sade" or "Plaintiff"), files this Complaint for Patent Infringement against Defendant East Pecos Solar LLC ("Defendant") and alleges as follows:

**INTRODUCTION**

1.     Plaintiff Rovshan Sade is an individual residing in Raleigh, North Carolina.

2.     Mr. Sade, a pioneer in the development of solar tracking systems, spent over two decades in the solar industry.  Mr. Sade owns U.S. patents that protect his revolutionary solar tracker design, Nos. 9,057,546 and 9,917,546.  Mr. Sade is the sole inventor on those patents.

3.     Mr. Sade founded Trabant Solar Inc. ("Trabant Solar"), a North Carolina Corporation, to market and sell his revolutionary solar tracker design. Mr. Sade is the sole shareholder of Trabant Solar.

4.     Defendant has infringed and continues to infringe Mr. Sade's patents.  Moreover, despite Mr. Sade and Trabant Solar notifying it of infringement, Defendant has thus far refused to license those patents and, instead, has continued to make, use, sell, offer to sell, and/or import Mr. Sade's intellectual property without permission.

## NATURE OF THE CASE

5.     This action arises under the patent laws of the United States, including 35 U.S.C. § 271, for Defendant's infringement of United States Patent Nos. 9,057,546 ("the '57546 patent") and 9,917,546 ("the '17546 patent") (collectively, "the Patents-in-Suit").

## THE PARTIES

6.     Rovshan Sade is an individual residing in Raleigh, North Carolina.

7.     Defendant East Pecos Solar LLC is a Delaware limited liability company, who operates a solar facility located on approximately 1,000 acres in Pecos County, and who may be served with process at its registered agent Corporation Service Company d/b/a CSC-Lawyers Inco at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action under; 28 U.S.C. §§ 1331 and 1338(a) at least because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*.

9.     Personal jurisdiction exists over Defendant at least because Defendant has committed, aided, abetted, contributed to and/or participated in the commission of acts of infringement giving rise to this action within Texas by, *inter alia*, directly and/or indirectly making, using, selling, offering for sale, importing products and/or practicing methods that practice one or more claims of the Patents-in-Suit. Defendant also has a regular and established place of business in this judicial district, specifically a 120-Megawatt solar facility located on approximately 1,000 acres in Pecos County. At least for those reasons, Defendant has the required minimum contacts within the forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendant has a regular and established place of business in this judicial district and has committed acts of infringement in Texas. In particular, Defendant has a regular and established place of business in this judicial district, specifically a 120-Megawatt solar facility located on approximately 1,000 acres in Pecos County. Venue is further proper based on the facts alleged in the preceding paragraphs, which Plaintiff incorporates by reference as if fully set forth herein.

## THE PATENTS-IN-SUIT

11.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

### A.     U.S. Patent No. 9,057,546

12.     The '57546 patent, titled "Solar Tracker," was duly and properly issued by the USPTO on June 16, 2015.  A true and correct copy of the '57546 patent is attached hereto as **Exhibit A**.

13.     Mr. Sade is the owner of the '57546 patent and holds the right to sue and recover damages for infringement thereof, including past infringement, and seek injunctive relief.

### B.     U.S. Patent No. 9,917,546

14.     The '17546 patent, titled "Solar Tracker," was duly and properly issued by the USPTO on March 13, 2018.  A true and correct copy of the '17546 patent is attached hereto as **Exhibit B**.

15.     Mr. Sade is the owner of the '17546 patent and holds the right to sue and recover damages for infringement thereof, including past infringement, and seek injunctive relief.

## FACTUAL BACKGROUND

16.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

17.    The Patents-in-Suit stem from the research and design of innovative and proprietary technology developed by Mr. Sade.

18.    Mr. Sade started in the solar industry in the mid-2000s as an inventor and solar project developer.

19.    Rovshan Sade developed an innovative single-axis solar tracker, commonly referred to as a "solar tracker."

20.    A solar tracker optimizes and maximizes the energy production of solar photovoltaic panels (hereinafter "solar panels") by moving the solar panels from East to West in accordance with the movement of the sun throughout the day. A solar tracker generates significantly more energy than conventional fixed-mounted systems.

21.    Rovshan Sade's solar tracker is a decentralized structure that maximizes energy output and operational reliability.

22.    The Patents-in-Suit are directed to inventive technology relating to those developments.

23.    On information and belief, Defendant owns and operates a power plant using photovoltaic panels mounted on solar trackers to generate electricity, commonly referred to as a solar project, specifically a 120-Megawatt solar facility located on approximately 1,000 acres in Pecos County (hereinafter, "Defendant's solar project").

24.    On information and belief, Defendant's solar project uses infringing solar trackers.

25.    On information and belief, Defendant continues to use those infringing solar trackers.

26.    On information and belief, Defendant works closely with its customers, OEMs, distributors, and/or other third parties to make, use, sell, offer to sell, and/or import solar trackers.

Specifically, Defendant uses infringing solar trackers in order to provide solar energy to its customers, which may include private and public utilities.  Defendant would not be able to provide solar energy to its customers but for use of infringing solar trackers.  Further, Defendant's affirmative acts include, but are not limited to, any one or combination of: (i) designing specifications for use of its products; (ii) collaborating on, encouraging, and/or funding the development of processes for the use of its products; (iii) soliciting and/or sourcing the use of its products; (iv) licensing, developing, and/or transferring technology and know-how to enable the use of its products; (v) producing and/or selling energy to others generated by use of its products; (vi) enabling and encouraging the use of its products in the United States; and (vii) advertising its products and/or downstream products incorporating them in the United States.

27.    On information and belief, Defendant also provides marketing and/or technical support services for its products.  For example, Defendant facilitates ongoing operation and maintenance services for the solar energy projects that use and benefit from the infringing solar trackers.

## DEFENDANT'S PRE-SUIT KNOWLEDGE OF THE PATENTS-IN-SUIT AND CHARGE OF INFRINGEMENT

28.    Before filing this action, Plaintiff notified Defendant about the Patents-in-Suit and their infringement.

29.    On December 22, 2021, Plaintiff sent letters to several executives of East Pecos Solar LLC, including the Secretary, Chief Financial Officer, and General Counsel, notifying Defendant of its infringement of the '17546 and '57546 patents.  Among other things, the letters identified the Patents-in-Suit, alleged infringement of the Patents-in-Suit, including identifying exemplary infringing products, and offered to license the Patents-in-Suit.  Defendant did not respond. Copies of the letters are attached hereto as **Exhibit C**.

30.    Defendant still has not engaged in any meaningful discussions to end its infringement of the Patents-in-Suit and has not taken a license to them.  Instead, Defendant continues to knowingly, intentionally, and willfully infringe Plaintiff's patents directly, contributorily, and by inducement, to obtain its significant benefits without compensation.

## COUNT ONE

## INFRINGEMENT OF THE '57546 PATENT

31.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

32.    Mr. Sade is the sole inventor and lawful owner of all right, title, and interest in and to the '57546 patent, including all substantial rights and the sole and exclusive right to enforce the '57546 patent, to sue for infringement, and to recover damages for all past, present, and future infringement.

33.    The '57546 patent is valid and enforceable.

34.    The '57546 patent is generally directed to solar tracker design and construction for holding and rotating solar panels with solar photovoltaic cells.

35.    As solar energy rose in demand and solar energy producing systems increased in ubiquity, one exemplary issue with the prior art of the '57546 patent was increased difficulties in achieving optimal energy efficiency from solar panels.  Specifically, the then-existing panel supports and trackers were unable to harness the full energy capacity from installed panels. Generally, inefficient installation and operation led to increased expense in providing electrical power generated from solar energy.

36.    The '57546 patent teaches, among other things, an improved solar tracker that can hold and operate solar panels. The inventions of the '57546 patent decrease installation and

maintenance costs and improve panel alignment to increase energy efficiency and power production.

37.     Defendant owns and operates a solar energy facility that uses solar trackers that infringe the '57546 patent.  Defendant is able to provide solar-generated electrical power because of its infringement of the '57546 patent.

38.     Defendant has directly infringed, and continues to directly infringe, one or more claims of the '57546 patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by, among other things, making, using, selling, offering to sell, and/or importing in or into the United States without authorization products covered by one or more claims of the '57546 patent, including, but not limited to, the purchase, ownership, use of, operation, and/or maintenance of infringing solar trackers.

39.     Below, Defendant demonstrates on an element-by-element basis that those solar trackers practice each limitation of the exemplary claim.

40.     As one non-limiting example, Defendant infringes claim 5 of the '57546 patent. Defendant uses solar trackers that comprise:

a.      a support frame;

b.      a panel assembly rotatably mounted to the support frame for supporting one or more solar panels, said panel assembly comprising a central spine and a plurality of panel carriers; and

c.      a mounting assembly for rotatably mounting the panel assembly to the support frame, the mounting assembly comprising a mounting member rotatably connected to the support frame and a slot in said mounting member configured to receive the spine of the panel assembly; and

d.    an actuator assembly for rotating the panel assembly to track the movement of the sun.

41.    Defendant's solar trackers meet each and every element of at least claim 5 of the '57546 patent.

42.    Defendant's solar trackers rotate solar panels in accordance with the movement of the sun during the day to maximize energy production.



43.    Defendant's solar trackers include a support frame, including at least a plurality of support posts.



44.     Defendant's solar trackers include a support frame, on which a panel assembly of photovoltaic panels are rotatably mounted to the support frame and includes a torque tube beam which extends along the center of the frame. The torque tube beam is an example of a central spine. Defendant's solar trackers include transversely arranged elongated members to which the photovoltaic panels are mounted. The elongated members are examples of panel carriers.



45.     Defendant's solar trackers include a bearing assembly that mounts on top of the support posts for rotatably mounting the panel assembly to the support posts. The bearing assembly is an example of a mounting member. The bearing assembly includes an inner bearing race that

9

rotates within the outer bearing races. The inner bearing race is an example of a mounting member. The inner bearing race includes an open beam slot in which the torque tube beam is seated.



46.    Defendant's solar trackers include an electromechanical actuator for rotating the panel assembly to track the movement of the sun.



10

47.    Defendant has known of the '57546 patent and its infringement of that patent since at least as early as December 22, 2021.

48.    Defendant has induced infringement of, and continues to induce infringement of, one or more claims of the '57546 patent under 35 U.S.C. § 271(b), either literally and/or under the doctrine of equivalents, by, among other things, actively inducing others, including its customers, to make, use, sell, offer to sell, and/or import in or into the United States without authorization the infringing solar trackers. For example, through its power purchase agreements, Engineering, Procurement, and Construction agreements, and other operating agreements, Defendant induces, for example, contractors, operators, and customers to directly infringe the '57546 patent.

49.    Defendant took, and continues to take, active steps with the specific intent to cause others to infringe the '57546 patent, including by specifying and providing the infringing solar trackers for its solar projects and by supplying instructions, technical support, and operation and maintenance services that direct and encourage the infringing use of those trackers.

50.    Defendant performs these acts with knowledge of the '57546 patent and with knowledge that the induced acts constitute infringement, at least as of the date of the pre-suit notice described above and the filing of this Complaint, and Defendant is aware that the normal and customary use of the infringing solar trackers by others infringes one or more claims of the '57546 patent. Defendant's inducement is ongoing.

51.    Defendant has also contributed to, and continues to contribute to, the infringement of one or more claims of the '57546 patent under 35 U.S.C. § 271(c) by selling, offering to sell, importing, and/or supplying the infringing solar trackers and components thereof that constitute a material part of the claimed inventions. For example, through its power purchase agreements, Engineering, Procurement, and Construction agreements, and other operating agreements,

11

Defendant contributes to the direct infringement of the '57546 patent by, for example, contractors, operators, and customers.

52.     The infringing solar trackers and their components are specially made or specially adapted for use in a manner that infringes the '57546 patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

53.     Plaintiff has sustained and is entitled to recover damages as a result of Defendant's past and continuing infringement.

54.     Defendant's infringement has been knowing, deliberate, and willful, beginning at least as early as December 22, 2021, the date of Plaintiff's letter and therefore the date on which Defendant knew of the '57546 patent and that its conduct constituted and resulted in infringement of that patent.  Defendant is on notice of the patent and its infringement thereof once again through this Complaint.  Defendant, among other things, nonetheless has committed—and continues to commit—acts of direct and indirect infringement despite knowing that its actions constituted infringement of a valid and enforceable patent, despite a risk of infringement that was known or so obvious that it should have been known, and/or even though Defendant otherwise knew or should have known that its actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent.

55.     As a result of Defendant's infringement of the '57546 Patent, Plaintiff has suffered and will continue to suffer monetary damages and seeks recovery in an amount adequate to compensate for Defendant's past, present, and future infringement, but in no event less than a reasonable royalty together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285. Furthermore, Defendant's conduct in light of these

circumstances is willful and egregious and entitles Plaintiff to increased damages under 35 U.S.C. § 284.

56.    Defendant's continuing infringement of the '57546 patent has caused and will continue to cause Plaintiff irreparable harm, including through the loss of licensing and market opportunities and the impairment of Plaintiff's right to exclude, for which there is no adequate remedy at law. Plaintiff had numerous contracts, prospective contracts, and/or business opportunities that were destroyed by Defendant's implementation of its infringing solar trackers. For example, Plaintiff's patented trackers were being marketed by Siemens before Defendant's infringement began.  Likewise, Plaintiff had prototyped and showcased the patented tracker. These opportunities were undercut by Defendant's use of the infringing solar trackers.  The balance of hardships and the public interest support entry of injunctive relief against Defendant's continued infringement.

57.    Plaintiff is in full compliance with the patent marking provisions of 35 U.S.C. § 287(a), and the 35 U.S.C. § 287 does not limit Plaintiff's right to recover damages for infringement of the '57546 patent, including for pre-filing infringement, to the fullest extent permitted by law. Neither Plaintiff nor any licensee has made, offered for sale, or sold any article covered by the '57546 patent that would give rise to an obligation to mark.  Thus, there is no limitation on Plaintiff's recovery of damages, including for pre-filing infringement.

**COUNT TWO**

**INFRINGEMENT OF THE '17546 PATENT**

58.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

59.    Mr. Sade is the sole inventor and lawful owner of all right, title, and interest in and to the '17546 patent, including all substantial rights and the sole and exclusive right to enforce the

13

'17546 patent, to sue for infringement, and to recover damages for all past, present, and future infringement.

60.   The '17546 patent is valid and enforceable.

61.   The '17546 patent is generally directed to solar tracker design and construction for holding and rotating solar panels with solar photovoltaic cells.

62.   As solar energy rose in demand and solar energy producing systems increased in ubiquity, one exemplary issue with the prior art of the '17546 patent was increased difficulties in achieving optimal energy efficiency from solar panels.  Specifically, the then-existing panel supports and trackers were unable to harness the full energy capacity from installed panels. Generally, inefficient installation and operation led to increased expense in providing electrical power generated from solar energy.

63.   The '17546 patent teaches, among other things, an improved solar tracker that can hold and operate solar panels.  The inventions of the '17546 patent decrease installation and maintenance costs and improve panel alignment to increase energy efficiency and power production.

64.   Defendant owns and operates a solar energy facility that uses solar trackers that infringe the '17546 patent.  Defendant is able to provide solar-generated electrical power because of its infringement of the '17546 patent.

65.   Defendant has directly infringed, and continues to directly infringe, one or more claims of the '17546 patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by, among other things, making, using, selling, offering to sell, and/or importing in or into the United States without authorization products covered by one or more claims of the '17546

14

patent, including, but not limited to, the purchase, ownership, use of, operation, and/or maintenance of infringing solar trackers.

66.   Below, Defendant demonstrates on an element-by-element basis that those solar trackers practice each limitation of the exemplary claim.

67.   As one non-limiting example, Defendant infringes claim 1 of the '17546 patent. Defendant uses solar trackers that comprise:

a.   a support frame;

b.   a panel assembly rotatably mounted to said support frame and configured to support one or more solar panels, said panel assembly including a central spine rotatably mounted to the support frame and a plurality of panel carriers fixed relative to the central spine and extending outwardly from both sides of said central spine for supporting said solar panels;

c.   an actuator assembly for rotating the panel assembly to track the movement of the sun; and

d.   a mounting assembly for rotatably mounting the panel assembly to the support frame, said mounting assembly comprising: a mounting member configured to be rotatably connected to said support frame and an open-ended slot in said mounting member configured to receive the central spine of the panel assembly.

68.   Defendant's solar trackers rotate solar panels in accordance with the movement of the sun during the day to maximize energy production.



69.      Defendant's solar trackers include a support frame, including at least a plurality of support posts.



70.      Defendant's solar trackers include a support frame on which a panel assembly of photovoltaic panels are mounted, and includes a torque tube beam which extends along the center of the frame. The torque tube beam is an example of a central spine. Defendant's solar trackers

include transversely arranged elongated members to which the photovoltaic panels are mounted. The elongated members are examples of panel carriers.



71.    Defendant's solar trackers include an electromechanical actuator for rotating the panel assembly.



72.    Defendant's solar trackers include a bearing assembly that mounts on top of the support posts for rotatably mounting the panel assembly to the support posts. The bearing assembly is an example of a mounting assembly. The bearing assembly includes an inner bearing race that

rotates within the outer bearing races. The inner bearing race is an example of a mounting member. The inner bearing race includes an open beam slot in which the torque tube beam is seated.



73.    Defendant has known of the '17546 patent and its infringement of that patent since at least as early as December 22, 2021.

74.    Defendant has induced infringement of, and continues to induce infringement of, one or more claims of the '17546 patent under 35 U.S.C. § 271(b), either literally and/or under the doctrine of equivalents, by, among other things, actively inducing others, including its customers, to make, use, sell, offer to sell, and/or import in or into the United States without authorization the infringing solar trackers. For example, through its power purchase agreements, Engineering, Procurement, and Construction agreements, and other operating agreements, Defendant induces, for example, contractors, operators, and customers to directly infringe the '17546 patent.

75.    Defendant took, and continues to take, active steps with the specific intent to cause others to infringe the '17546 patent, including by specifying and providing the infringing solar trackers for its solar projects and by supplying instructions, technical support, and operation and maintenance services that direct and encourage the infringing use of those trackers.

76.    Defendant performs these acts with knowledge of the '17546 patent and with knowledge that the induced acts constitute infringement, at least as of the date of the pre-suit notice described above and the filing of this Complaint, and Defendant is aware that the normal and customary use of the infringing solar trackers by others infringes one or more claims of the '17546 patent. Defendant's inducement is ongoing.

77.    Defendant has also contributed to, and continues to contribute to, the infringement of one or more claims of the '17546 patent under 35 U.S.C. § 271(c) by selling, offering to sell, importing, and/or supplying the infringing solar trackers and components thereof that constitute a material part of the claimed inventions. For example, through its power purchase agreements, Engineering, Procurement, and Construction agreements, and other operating agreements, Defendant contributes to the direct infringement of the '17546 patent by, for example, contractors, operators, and customers.

78.    The infringing solar trackers and their components are specially made or specially adapted for use in a manner that infringes the '17546 patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

79.    Plaintiff has sustained and is entitled to recover damages as a result of Defendant's past and continuing infringement.

80.    Defendant's infringement has been knowing, deliberate, and willful, beginning at least as early as December 22, 2021, the date of Plaintiff's letter and therefore the date on which Defendant knew of the '17546 patent and that its conduct constituted and resulted in infringement of that patent.  Defendant is on notice of the patent and its infringement thereof once again through this Complaint.  Defendant, among other things, nonetheless has committed—and continues to

commit—acts of direct and indirect infringement despite knowing that its actions constituted infringement of a valid and enforceable patent, despite a risk of infringement that was known or so obvious that it should have been known, and/or even though Defendant otherwise knew or should have known that its actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent.

81. As a result of Defendant's infringement of the '17546 Patent, Plaintiff has suffered and will continue to suffer monetary damages and seeks recovery in an amount adequate to compensate for Defendant's past, present, and future infringement, but in no event less than a reasonable royalty together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285. Furthermore, Defendant's conduct in light of these circumstances is willful and egregious and entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

82. As a result of Defendant's infringement of the '17546 patent, Plaintiff has been and continues to be damaged in an amount to be determined at trial, but in no event less than a reasonable royalty for Defendant's unauthorized use of the patented invention, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

83. Defendant's continuing infringement of the '17546 patent has caused and will continue to cause Plaintiff irreparable harm, including through the loss of licensing and market opportunities and the impairment of Plaintiff's right to exclude, for which there is no adequate remedy at law. Plaintiff had numerous contracts, prospective contracts, and/or business opportunities that were destroyed by Defendant's implementation of its infringing solar trackers. For example, Plaintiff's patented trackers were being marketed by Siemens before Defendant's infringement began.  Likewise, Plaintiff had prototyped and showcased the patented tracker.

These opportunities were undercut by Defendant's use of the infringing solar trackers. The balance of hardships and the public interest support entry of injunctive relief against Defendant's continued infringement.

84.    Plaintiff is in full compliance with the patent marking provisions of 35 U.S.C. § 287(a), and the 35 U.S.C. § 287 does not limit Plaintiff's right to recover damages for infringement of the '17546 patent, including for pre-filing infringement, to the fullest extent permitted by law. Neither Plaintiff nor any licensee has made, offered for sale, or sold any article covered by the '17546 patent that would give rise to an obligation to mark. Thus, there is no limitation on Plaintiff's recovery of damages, including for pre-filing infringement.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims and issues so triable.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court enter judgment against Defendant as follows:

A.    that Defendant has infringed each of the Patents-in-Suit;

B.    that Defendant's infringement of each of the Patents-in-Suit is and has been willful;

C.    that Plaintiff be awarded damages adequate to compensate him for the patent infringement that has occurred, together with pre-judgment interest, post-judgment interest, and costs;

D.    that Plaintiff be awarded an accounting and additional damages for any infringing sales not presented at trial;

E.    that Plaintiff be awarded all other damages permitted by 35 U.S.C. § 284, including without limitation increased damages up to three times the amount of compensatory damages found;

21

F.      that this is an exceptional case and that Plaintiff be awarded his costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285;

G.      that Defendant, as well as its officers, directors, agents, employees, representatives, attorneys, and all others acting in privity or in concert with it, and its subsidiaries, divisions, successors, and assigns, be permanently enjoined from further infringement of each of the Patents-in-Suit;

H.      that, in the event a permanent injunction preventing further infringement of each of the Patents-in-Suit is not granted, Plaintiff be awarded a compulsory ongoing licensing fee for any such further infringement; and

I.      such other relief as this Court deems just and proper.

Dated: June 16, 2026

Respectfully submitted,

**BLANK ROME LLP**

By:  _/s/ Michael F. Reeder II_
Michael F. Reeder II
Texas Bar No. 24070481
michael.reeder@blankrome.com
Domingo M. LLagostera
Texas Bar No. 24070157
domingo.llagostera@blankrome.com
717 Texas Ave., Suite 1400
Houston, Texas 77002
713.815.3318

Ferlillia V. Roberson
Texas Bar No. 24150239
ferlillia.roberson@blankrome.com
444 West Lake Street, Suite 1650
Chicago, IL 60606
312.776.2608

_Counsel for Plaintiff Rovshan Sade_